### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.   04-10114-DPW |
| | ) | |
| 1.   ANTONIO CARDONA, | ) | |
|      a/k/a "ANT," and | ) | |
| | ) | |
| 2.   JEROME LASSITER, | ) | |
|      a/k/a "BUTTA," | ) | |
| | ) | |
| Defendants. | ) | |

### GOVERNMENT'S OPPOSITION TO
### DEFENDANT JEROME LASSITER'S
### "MOTION TO MODIFY CONDITIONS OF DETENTION"
### AND MOTION FOR LEAVE TO FILE SAME LATE

Now comes the United States of America, by and through the undersigned counsel, and submits herewith the Government's Opposition to Defendant Jerome Lassiter's "Motion to Modify Conditions of Detention" and Motion for Leave to File Same Late. In support of the government's motions, the government sets forth the following:

1.    On or about November 11, 2004, defendant Jerome Lassiter ("Lassiter"), through counsel, filed a 4-paragraph motion entitled "Defendant's Motion to Modify Conditions of Detention" ("Lassiter Motion").  Apparently, that motion was filed electronically, which means the government (and, in particular, the undersigned Assistant U.S. Attorney ("AUSA")) would have received automatic notification of that filing.

2.    Nevertheless, the government apparently did not receive notification of Lassiter's motion.  In fact, on November 19, when

Lassiter and his co-defendant appeared to be re-arraigned on the Superseding Indictment, the government was surprised to hear Lassiter's counsel and the Court's deputy clerk reference any such motion.  At the time, no mention was made about electronic filing, so the undersigned assumed it was something that he would receive in due course via the mail.

3.    The undersigned was on sick leave from December 2 through 7, 2004 in connection with an outpatient medical procedure.  When the undersigned AUSA returned to work, he found an electronic message from the Court's deputy clerk inquiring about the government's position on Lassiter's motion.

4.    The undersigned AUSA still had not received any such motion through the mail and the undersigned went back through his e-mail messages to see if there was one he had missed which contained Lassiter's motion, but found none.[1]

5.    Accordingly, the government retrieved a copy of Lassiter's motion via the Court's Pacer system on or about December 8 or 9, 2004.  On December 9 and 10, 2004, the government made

---

[1]  The government does not wish to suggest in any way, shape, or form that defense counsel did not file the motion electronically or otherwise fail to comply with the Court's ECF requirements.  Rather, the foregoing information is offered simply to explain the lateness of the government's filing and to demonstrate its (attempt at) diligence.  In fact, barring defects in the Court's ECF system of which the undersigned is unaware, it seems more likely that the undersigned AUSA may have deleted some time ago the pertinent e-mail notification by accident and without having had an opportunity to determine its contents.

inquiries with Pre-Trial Services concerning its position on Lassiter's motion and on December 10, 2004 the government began making inquiries with the Roxbury District Court Probation Office, under whose supervision Lassiter was at the time of his arrest on the instant offenses.

6.    Based on the foregoing, the government requests that the Court grant the government leave to file late its opposition to Lassiter's motion.

7.    While styled a "Motion to Modify Conditions of Detention," Lassiter's motion really is a renewal of his previously denied motion for release on conditions.  In particular, he seeks to be released to the residential substance abuse treatment program at Spectrum House in Westborough, Massachusetts.  In essence, Lassiter offers the following three sentences in support of his release motion:

> As reasons herein [sic], the defendant states that his substance abuse problems cannot be successfully rehabilitated without professional, in-patient treatment.
>
> The defendant is currently housed at the Plymouth County Correctional Facility, where he has been told his status as a federal detainee prevents him from receiving certain health care services including, but not limited to, a medical evaluation of his substance abuse dependency level.  Even if he did receive an evaluation, the facility is unequipped and unable to provide him with the kind of continual expert care he needs to permanently end his substance abuse problems.

Lassiter Motion at 1.

8.    Even if one were to consider just the arguments advanced

3

by Lassiter himself in favor of his release, his motion would be meritless. Lassiter does not bother to describe, let alone substantiate, a substance abuse addiction. Instead, he refers in a self-serving and conclusory fashion to "his substance abuse problems." In the very next sentence, he seeks "a medical evaluation of his substance abuse dependency level." In the next sentence, he seeks release to a substance abuse treatment program "with the kind of continual expert care he needs to permanently end his substance abuse problems." Yet, as this Court has heard time and again from pre-trial releasees who have used drugs while participating in or after completing treatment programs, it is not uncommon for truly addicted individuals to have several post-treatment relapses before achieving true sobriety. Based on his own motion, it would appear that Lassiter has never bothered before this to seek or complete any drug treatment program. Therefore, it is extremely unlikely that granting Lassiter's motion would achieve Lassiter's own stated objective: a "permanent[] end" to his unsubstantiated "substance abuse problems."

9. Moreover, this Court of course will (and must) consider not just Lassiter's self-serving motion, but the entire record in this matter. That record includes the Pre-Trial Services Report from last April in which Lassiter himself did not describe himself either as being addicted or as having a substance abuse problem, even though he admitted to having "used marijuana every day since

he was 12 years of age."

10. While the undersigned is not an expert on drug dependency, the government submits that daily marijuana use in and of itself is not evidence of a drug addiction. Apparently Pre-Trial Services ("PTS") agrees, since it is the government's understanding that PTS does not recommend that Lassiter be released to Spectrum House or any other residential drug program and believes that sending someone like Lassiter to such a program would be an imprudent expenditure of limited treatment funds and space.

11. Nor, does it seem, that Lassiter's own counsel believed last Spring that Lassiter's own report of daily marijuana use was enough to justify release to a treatment facility. The undersigned's notes of the May 5, 2004 detention hearing indicate that, at the close of the hearing, after defense counsel had made an argument that Lassiter be released to his mother's home (not to a treatment facility), Magistrate Judge Alexander inquired if Lassiter had any "substance abuse problems" and defense counsel replied that he was not prepared to address that issue at that time.

12. Indeed, in her June 30, 2004 Order on Detention, Magistrate Judge Alexander noted that the defense "did not respond to this Court's inquiries about the potential for release to a treatment facility." Order on Detention at 6-7. Nor has the defendant offered any additional, let alone substantiated,

information in connection with his essentially renewed motion for release.

13. Another thing that has not changed since the original detention hearing is Lassiter's criminal record, which Magistrate Judge Alexander described as follows:

> Despite his youth, he has been prodigious in criminal conduct. His record as an adult reveals that he has "graduated" from early insurance and motor vehicle violations, to convictions for knowingly receiving stolen property, operating a motor vehicle after suspension of his driving license to, in a rather short time span, various and repeated controlled substance offenses and at least one firearms violation (for which he was on supervised release at the time of this offense).

> As alarming to this Court is the fact that his record indicates repeated defaults while on probation; not surprisingly, his supervised release was revoked. The Court directed the P[re-Trial]S[ervices]O[fficer] to inquire of the status of Mr. Lassiter with his Massachusetts probation officer. That inquiry yielded information that is also significant: notwithstanding a more recent understanding of the need to obey the law (an epiphany purportedly coinciding with the birth of the defendant's child), Mr. Lassiter evidently missed every scheduled drug test ordered by the Massachusetts court (some, but not all, of those absences were due to the defendant's incarceration), for failing to report and for not having verification of his residence. [footnote]

> > [footnote] The PSO reports that the Massachusetts probation officer will seek a probation violation warrant for Mr. Lassiter if this Court were to release him from pre-trial detention.

Order on Detention at 6 (one footnote omitted). Indeed, as recently as the date of this submission, William Wallace, Acting Chief Probation Officer for the Roxbury District Court, confirmed to the undersigned AUSA that his office would still seek Lassiter's

surrender for a probation violation hearing were Lassiter to be released from federal custody.  Thus, Lassiter not only remains a bad risk for release on conditions, but, even if this Court were to order his release, he probably would remain in custody pending a probation violation hearing in state court.

14.  Not only would it be imprudent to release Lassiter to a treatment program and not only would he be unlikely to be released from state custody to begin such a program, but it is highly unlikely that Lassiter would be able to complete any meaningful treatment regimen.  After all, Lassiter himself nearly three months ago filed a motion, which Judge Woodlock granted, for the preparation of a pre-plea Pre-Sentence Report ("PSR").  The government submitted on a timely basis a statement of the offense conduct which was just 18 paragraphs long.  Given the length of time which has already elapsed (and Judge Woodlock's attention to his docket), the government assumes that such a PSR will be disclosed in the next few weeks.  At that time, pursuant to 18 U.S.C. § 3143(a)(2) and barring exceptional circumstances (of which there appear to be none), Judge Woodlock will be required to order Lassiter detained, even if Lassiter were to have been released in the meantime.

15.  In short, the government submits that Lassiter's instant motion for release to a substance abuse treatment facility has no merit and that there is no realistic prospect of achieving the

objective of his motion.

For all the foregoing reasons, the government respectfully requests that this Court grant its motion for leave to file this opposition late and deny "Defendant's Motion to Modify Conditions of Detention."

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    /s Patrick Hamilton/
PATRICK M. HAMILTON
Assistant U.S. Attorney
U. S. Attorney's Office
John Joseph Moakley
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617) 748-3251

Date:    December 13, 2004

## CERTIFICATE OF SERVICE

I, Patrick M. Hamilton, do hereby certify that a copy of the foregoing has been served this date electronically upon counsel of record for defendants Jerome Lassiter and Antonio Cardona.

Date:    December 13, 2004         /s Patrick Hamilton/
Patrick M. Hamilton