UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | No. 04-10114-DPW |
| ) | |
| JEROME LASSITER ) | |

## MEMORANDUM OBJECTING TO THE PRESENTENCE REPORT

The defendant Jerome Lassiter objects to the following findings of the Presentence Report (PSR):

1  That his sentence be determined exclusively under the U.S. Sentencing Guidelines;

2.  That information relating to the investigation of other defendants in the Warren Gardens Housing Project is germane to the case at bar;

3.  That he conspired with and aided and abetted Antonio Cardona;

4.  That he responsible for any cocaine base amount directly attributable to Antonio Cardona;

5.  That he distributed cocaine base on June 19, 2003 within 1,000 feet of the Little Scobie Playground.

6.  That there are no factors which would warrant departure in this case.

## ARGUMENT

**1. The Sentencing Guidelines Are Advisory**

Lassiter objects to the PSR's use of the federal sentencing guidelines as determinative of the sentence he would receive if convicted. The sentencing guidelines are advisory, not

mandatory. *See United States v. Booker*, 2005 WL 50108 (Jan. 12, 2005). Although it is anticipated that sentencing courts will continue to consult the guidelines in an advisory capacity, the court has discretion to consider other factors, including some which may have been previously discouraged or prohibited, in order to pass judgement appropriate to the defendant. *Id*.; 18 U.S.C. 3553 (a)(Supp. 2004). The mechanical use of the guidelines to set mandatory base offense levels and include enhancements not proven to a jury beyond a reasonable doubt is not permissible.

Lassiter also objects to the PSR's citation of the "Notice of Additional Factors," which the government added to the defendant's indictment by superseding the original. *See* PSR, ¶ E. The defendant moved to strike the notice as impermissible surplusage, which is now validated by the Supreme Court's decision in *Booker, cited infra*.[1] Although the PSR may reach its conclusions regarding cocaine base totals through other information at its disposal, the defendant objects to the government's notice of additional factors and to the notion that such allegations are outcome determinative.

**2.    The Warren Gardens Investigation**

Lassiter objects to the PSR Part A, paragraphs L-Q, listed under the subheading "Related Cases." This information, naming a number of other defendants and their federal case docket numbers, is not related in any relevant way to the case at bar. These paragraphs implicitly assume that Lassiter was connected in some way to a larger criminal scheme with many actors, absent a scintilla of evidence, let alone proof. The Indictment names only one co-defendant, Antonio Cardona based upon an attenuated theory, and does not allege that Lassiter was

---

[1] As of January 24, 2005, the Court has not ruled on the motion to strike.

involved in a larger conspiracy. By trying to make Lassiter appear more culpable to a sentencing court than he actually is, these paragraphs are highly and unfairly prejudicial.

Equally unfair are the paragraphs listed under "Background of the Warren Gardens Investigation," Part A, paragraphs (2)-(11). The information in these paragraphs, detailing law enforcement's designation of the Warren Gardens area as a criminal "hot spot," PSR, ¶ 2, and chronicling efforts to set up surveillance and make controlled purchases of drugs from a number of area suspects,[2] has no relevance to disposition of Lassiter's case. The fact that the government determined to target a particular neighborhood, albeit an allegedly troubled one, cannot be used as a broad brush to shellac any specific defendant.

**3.      The Conspiracy and Aiding and Abetting Allegations**

Lassiter objects to the allegations that he conspired with, and aided and abetted, Cardona on June 19, 2003, an allegation not supported by the facts. The government's evidence, as contained in discovery, does not show that Cardona and Lassiter were working together on June 19th. The undercover agent claims that after he and Lassiter met and began walking together down Warren Street, they were joined by Cardona who had just walked out of a market. *See* Attachment 1, Report of Investigation, TFA Joao J. Monteiro, at 2. After entering a liquor store and after Lassiter allegedly sold the agent a small amount of crack, the agent asked for more. *Id*. Lassiter allegedly commented "Here we go, he needs three more." Thereafter, Cardona made it clear that he was working alone, and not in tandem with Lassiter. First, he allegedly said "I got ya." *Id.* More importantly, he told the agent not to talk to anyone else. *Id.* The agent and

---

[2] This section states that controlled buys were made from 24 individuals, and presents a list of 16 individuals, including Lassiter, who have been charged with federal drug offenses. PSR, ¶ 4.

Cardona then left the liquor store and Lassiter behind, and conducted a transaction at a bus stop across the street. *Id*. The agent states that after he gave Cardona money and Cardona left to get the drugs, Lassiter came out of the liquor store, crossed the street, and at the agent's request wrote his number on a business card. *Id.,* at 2-3.

While one might conclude that Lassiter and Cardona knew each other, more is needed to show that the two were working in tandem. The discovery does not indicate that the defendants discussed anything during the transaction. Even when the agent allegedly bought from Lassiter and asked for more, there is no claim that Lassiter and Cardona talked it over or in any other way came to any agreement. *See id.*, at 2. The agent's report states that Cardona then led the agent out of the liquor store telling him not to deal with anyone else, which would include Lassiter. *Id*. Although the agent claims to have spoken to Lassiter afterward, across the street, he does not indicate that the conversation was long or that Lassiter waited for Cardona to return, as a true partner might in order to make sure that the transaction was concluded satisfactorily. *See id.,* at 2-3.

The agent asked both defendants separately for contact information. *Id.* When Lassiter gave his telephone number, he did not tell the agent to either call him or Cardona. *See id.* There is no evidence he mentioned Cardona at all. Similarly, when Cardona was asked for a phone number, he did not say anything about Lassiter. *Id.* at 3. The agent states that Cardona said his "name was Ant and to just come around and see him," *id.*, manifesting a second time that he was not working with Lassiter. True conspirators would have instructed the agent that if one was not available for a future sale, the other would be. Nothing in the report shows that kind of connection between Lassiter and Cardona.

4

Further, a chemical analysis of the alleged cocaine base purchased on that date shows a significantly different purity level between what the agent claimed he received from Lassiter and what he claimed to receive from Cardona. *See* Attachment 2, DOJ Reports of Drug Property, analyzed by Kathleen J. Pfeiffer. The cocaine base sold by Lassiter and that sold by Cordona did not derive from a common stock but rather from two separate sources, contradicting any notion of a joint endeavor.

Instead of indicating a partnership, the discovery suggests a different conclusion, and one that is a reality in any business, legitimate or not: after one retailer sells out, the next one steps in. This situation is analogous to Macy's running out of a product and suggesting to the customer that she can find the item next door at Filenes. The two stores remain competitors – they are not in league with each other. Businesses do not send customers to their competitors because they have a tacit agreement, the gravamen of a conspiracy, to do so. One competitor suggesting the services of another in order to satisfy a customer does not aiding and abetting make. They refer customers because it generates goodwill and gives the customer an incentive to ultimately return to the business which made the referral. The intent is to aid the customer, not the competitor.

4.  **Cocaine Base Total**

For the reasoning in Section 3 above, Lassiter objects to the PSR's conclusion that he is accountable for the amount of cocaine base the government attributes to Cardona from the June 19, 2003 sale. PSR, ¶ 31. As the table in paragraph 31 indicates, the weight attributable to Lassiter's alleged sale on that date is .63 grams. *Id*. If that weight is combined with the alleged sale by Lassiter on July 1, 2003, charged in Count Three, the total is 1.83 grams. However,

because the Indictment charges the defendant with conspiracy in Count One, and with aiding and abetting in Count Two, it thereby seeks to hold him responsible for the June 19th controlled buys, *i.e.* the .57 grams attributed to Cardona. Under the sentencing guidelines table, the resulting total of 2.4 grams, as opposed to 1.83 grams, would increase the base offense level by two. The conclusion that Lassiter distributed more than 2 grams of cocaine base is unjustified because the government's evidence, for the reasons set forth in Section 3 above, does not show beyond a reasonable doubt that Cardona and Lassiter conspired or aided and abetted.

Lassiter also objects to inclusion in his PSR of the alleged July 23, 2003 controlled buy solely involving Cardona. *See id.*, ¶¶ 21-23. Even were this court to hold Lassiter accountable for the contraband Cardona allegedly sold on June 19, 2003, Lassiter was not involved in the July 23rd incident and cannot be held accountable for it. Including information regarding this controlled buy in Lassiter's PSR is not relevant to him and is highly prejudicial for the same reasons outlined in Section 2 above, regarding the Warren Gardens Investigation.

5.     **Distributing In A Protected Location**

Lassiter objects to inclusion in the PSR that the alleged transaction on June 19, 2003, charged in Counts One and Two of the Indictment, occurred within 1,000 feet of the Little Scobie Playground. *Id.*, ¶¶ 17, 32. To convict for a playground zone violation, "the government must prove beyond a reasonable doubt that the distance from a school to the actual site of the transaction, not merely to the curtilage or exterior wall of the structure in which the transaction takes place, is 1,000 feet or less." *United States v. Soler*, 275 F.3d 146, 154 (1st Cir. 2002).

The PSR states the Little Scobie Playground "is located opposite 37 Copeland Street." PSR, ¶ 17. While the PSR does not name the liquor store where this alleged transaction

occurred, the government's discovery identifies it as "Warren Liquors." *See* Attachment 1, Report of Investigation, at 2. Warren Liquors is located at 368 Warren Street, Roxbury, Massachusetts. Electronically-generated maps acquired from the Mapquest and Yahoo Maps Internet sites show that a straight line distance between the playground and the liquor store them is well over 1,000 feet and would appear to be closer to 1,400 feet. *See, e.g.*, Attachment 3 (containing a site map from Yahoo Maps). These maps may not be conclusive, but the government has provided no discovery of any kind which addresses this element of the charged offense.

**6.      Factors For Departure**

Lassiter objects to the contention that there are no factors warranting departure. PSR, ¶ 112. As noted above in Section 1, a discretionary sentencing scheme could include factors which were previously discouraged or prohibited under the federal sentencing guidelines.[3] One of those factors relevant to Lassiter, but not necessarily the only one, is his substance abuse history. The defendant has stated that he has a substance abuse problem and has asked the Court to allow him to seek treatment.[4] Like many accused street level dealers, Lassiter suffers from his own drug addiction and his criminal record reflects this involvement. His is not a resume of a drug kingpin but of someone whose habitual use of drugs has clouded his judgment and procured his ability to lead a law-abiding life. He has taken steps to cure this addiction, and will ask the

---

[3] It will likely take years of federal appeals court decisions to determine the exact degree to which courts may use these factors.

[4] The defendant's contention is noted in the PSR at paragraph 78. The court held a hearing on January 6, 2005, to determine if the defendant could be allowed to receive in-patient drug treatment at the Spectrum House while he remains detained for the case at bar. The Court, as of January 24, 2005, has not ruled on this issue.

Court to take this into consideration.

Lassiter also objects to the use of his criminal history as outlined in paragraphs 42-62, on the grounds that his criminal history overstates the seriousness of the crimes. The PSR notes that it has not received requested police and/or court documents for several of the listed offenses. *See id.* The circumstances surrounding these incidents are important and should be considered in the interests of determining a reasonable sentence. For example, paragraph 49 asserts that the defendant has been convicted of firearm possession. The defendant asserts that the actual offense was possession of ammunition, which the police records would indicate. Abjuring any contention that they are both serious offenses with similar consequences under the federal sentencing guidelines, they are not the same offense and the facts of the actual conviction should be noted accurately.

## CONCLUSION

For the forgoing reasons, Lassiter objects to the PSR's findings that his sentence be determined under the U.S. Sentencing Guidelines, that he may be more culpable because of a wider investigation at Warren Gardens, that he conspired with and aided and abetted another and is therefore responsible for more than two grams of cocaine, that he distributed crack cocaine within 1,000 feet of a playground zone on June 19, 2003, and that there are no factors warranting departure. If convicted, Lassiter asks that the court disregard these conclusions when determining his sentence.

JEROME LASSITER
By his attorney,

/s/ *John H. Cunha Jr.*

John H. Cunha Jr.
B.B.O. No. 108580
CUNHA & HOLCOMB, P.C.
One State Street, Suite 500
Boston, MA 02109-3507
617-523-4300

Dated: January 24, 2005                                      H:\Word\Crim\Lassiter\Memo Objecting to PSR.wpd

### CERTIFICATE OF SERVICE

I certify that on this date I have served the foregoing document by electronic filing upon AUSA Patrick Hamilton, U.S. Courthouse, Suite 9200, 1 Courthouse Way, Boston, 02210, and by first class mail, postage paid, upon P.O. Michelle K. Roberts, Probation Department, 1 Courthouse Way, Boston, MA 02210

/s/ *John H. Cunha Jr.*
John H. Cunha Jr.