UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **UNITED STATES** ) | |
| ) | |
| v.            ) | No. 04-10114-DPW |
| ) | |
| **JEROME LASSITER** ) | |

SUPPLEMENTAL SENTENCING MEMORANDUM

I.   INTRODUCTION

The defendant, Jerome Lassiter, submits the following memorandum to supplement his previous sentencing memorandum and motion for departure ("Sentencing Memo"), filed with this court on April 27, 2005. The defendant renews his motion for downward departure from the government's recommended sentence based exclusively on the U.S. Sentencing Guidelines, which are now advisory under *United States v. Booker*, 125 S. Ct. 738 (2005).[1] The *Booker* decision forbids the mechanical application of the guidelines' offense levels, including the crack cocaine levels listed in U.S.S.G. § 2D1.1. *See id.* The defendant asks this Court to apply the factors in 18 U.S.C. 3553 (a)(Supp. 2004) and order a sentence that is appropriate and adequate but does not punish him more than is necessary for his specific, individual conduct.

---

[1] The defendant objected to his base offense total being set according to the crack cocaine weight tables, listed at U.S.S.G. § 2D1.1, and the inclusion of crack cocaine weight attributable to another defendant. Sentencing Memo at 2. The defendant also stated that the government's recommended sentence contained sentencing enhancements dependant on facts not found by a jury beyond a reasonable doubt, and was enhanced by a criminal history that is a direct result of drug addiction. *Id.* Finally, the defendant objected for the second time to the inclusion in his PSR of unrelated defendants and offenses, a listing that served no purpose other than to imply a connection between the defendant and a larger conspiracy, an implication for which not one shed of evidence exists. *Id.* at 8.

## II.  ARGUMENT

### A.  THE COURT HAS THE DISCRETION TO IMPOSE AN APPROPRIATE NON-GUIDELINE SENTENCE.

The defendant's previous memo cited the 100-1 crack cocaine disparity, noting that the base offense level under the Guidelines for the same amount of powder cocaine is 12. Sentencing Memo, 6-7.[2]  In response, the government's attorney directed counsel to review the opinion in *United States v. Tabor* (D.Neb. 2005).[3]  The *Tabor* judge openly cited his discomfort with the crack cocaine Guidelines and the harsh prison sentences it had led him to impose.[4]  Yet, after a thorough discussion of the problems with the crack Guidelines, the court nonetheless imposed the Guideline sentence:

> Finding no plainly superior reason to do otherwise, I will apply the crack Guidelines and impose a prison sentence within the otherwise applicable Guideline range. Although the Sentencing Commission and many judges (including me) disagree with Congress on this point, the crack cocaine Guidelines represent a reasoned and reasonable policy choice by Congress that should be given substantial deference. When that deference is properly recognized, the crack Guidelines should be implemented without judicial alteration.

Id. at 3.  The defendant in the case at bar emphatically disagrees and rejects the crack cocaine guidelines as "reasonable policy," as does the U.S. Sentencing Commission:  "[T]he

---

[2] This level accounts for 2.4 grams, which is both the weight the defendant sold and the additional weight the government has applied from a sale by co-defendant Antonio Cardona. Under the crack cocaine Guidelines, the base offense level would be 20.  If the Cardona sale was not included, the defendant's total weight at issue would be 1.8 grams, a crack cocaine offense level of 18, and a powder cocaine level of 12.  When considering this issue the defendant asks this Court, as did Cardona, to also consider as a matter of law if the defendant's conduct rose to the level of conspiracy and aiding and abetting.

[3] As the government has not yet filed its sentencing memo, it has not yet formally relied on the Tabor opinion or any other.

[4] "For more than a decade, I have been deeply troubled by, and have written critically about, the crack cocaine Guidelines." *Tabor*, at 1.

Commission firmly and unanimously believes that the current federal cocaine sentencing policy is unjustified and fails to meet the sentencing objectives set forth by Congress in both the Sentencing Reform Act and the 1986 Act." *2002 Special Report to Congress*, United States Sentencing Commission, at 91.

Although the *Tabor* court acknowledged the Guidelines as advisory ("[g]iven my newly minted discretion..." *Id.* at 2) the end result was their mandatory application. The court reasoned that judges did not have the same institutional capacity or personal competence as Congress or the Commission to institute a new national standard for crack sentencing. *See id.* at 16. That view ignores that the Commission has tried to set a new national standard, an effort the defendant asks the Court in this case to recognize, and implies that federal judges who depart from the crack Guidelines are somehow attempting to set yet another mandatory national standard, a move that would fly in the face of the Supreme Court's recent decisions on federal sentencing. A new judge-made standard would also undercut the federal courts' "newly-minted discretion" which allows them to sentence according to the individual case and the specific circumstances, an intellectual and judicial prerogative that was severely constrained under the mandatory Guidelines.

While the *Tabor* opinion emphasizes the supposed reasonableness of the Guidelines and Congress's approval of them, it curiously downplays other factors that clearly influenced the sentence. The court noted that the defendant lost at trial and forfeited every sentence reduction that would have come from pleading guilty, including a safety-valve waiver of a mandatory minimum. *Id*. at 17-18. Further, the court took into account the long sentences given to co-defendants, and sentenced accordingly. *Id.* at 18. Finally, the court denied the defendant's

departure motions upon determining that they were unwarranted. *Id.* at 17.[5] *Compare United States v. Gerancon,* No. 3:02CR44, slip opinion *2-3 (Conn. June 8, 2005) (in which the court specifically declined to impose sentence below crack Guidelines because of aggravating factors, including the defendant's possession of a weapon, his evasiveness during a proffer session, and the evidence which showed a much larger drug amount involved than was charged in the indictment).

The *Tabor* court noted that other judges disagree with the crack Guidelines. *See id.* at 3. However, many if not all of those judges have sentenced according to their views, a clear recognition that giving "substantial deference" to the Guidelines is different than being bound by them. *See, e.g.*, *Simon v. United States*, 36 F. Supp. 2d 35 (E.D.N.Y. 2005); *United States v. Smith*, 359 F. Supp. 2d 771 (E.D. Wis. 2005); *United States v. Williams,* 2005 U.S. Dist. LEXIS 8178 (M.D. Fl. May 5, 2005); *United States v. Harris*, 2005 U.S. Dist. LEXIS 3958 (D.D.C. Mar. 7, 2005). Other judges also disagree that Congressional approval should be the deciding factor at sentencing: "The fact that the Commission forwards its guidelines to Congress does not make the guidelines any less advisory. As the Supreme Court made clear in *Booker* and *Blakely*, whatever their source, mandatory guidelines that require judicial fact-finding violate the Sixth Amendment." *United States v. Leroy*, 03-CR-289, slip opinion * 8-9 (E.D.Wis. June 20, 2005)(footnote omitted). It was Congress, in fact, that directed the Commission to specifically examine and report on "the differences in penalty levels that apply to different forms of cocaine," in the Violent Crime Control and Law Enforcement Act of 1994. *Pub.L.* No. 103-322,

---

[5] The court openly questioned the defendant's sincerity and motive for the departure requests: "I hope I will be forgiven for doubting that [the defendant's] concern for his mother or his recent attention to churchly matters mean very much to relevant sentencing." *Id*. at 17.

§ 280006, 108 *Stat*. 2097 (1994).

The defendant asks that this Court take into account the Commission's findings on the crack cocaine Guidelines, including among others: that the aggravating factors do not differ substantially between crack and powder cases; the pharmacological differences and their effects do not merit disparate sentences; the harsh penalties for crack have increased the racial disparity in federal sentencing; and large scale suppliers of powder cocaine have received lesser sentences than street-level crack dealers. *See Leroy,* slip opinion, at *8 (stating why previous rationales for the 100-1 disparity have not withstood scrutiny). "In light of these well-supported findings by the Commission, a court acts well within its discretion under § 3553(a) in sentencing below the guideline range to account for the unreasonable inflation of sentences called for in crack cases." *Id.*

As previously noted, the defendant's Guideline for the same amount of powder cocaine at issue in this case would have been offense level 12. If a non-Guideline 20-1 ratio was used, the offense level would be 14. With an additional two points for the playground zone violation, the base offense level would be 16, which would qualify the defendant for a reduction of three levels for his guilty plea, under U.S.S.G. § 3E1.1. Under Criminal History Category VI, the Guideline sentence would be 33-41 months, a range that would be higher but more in line with the sentence given to his co-defendant Cardona for similar and arguably less serious conduct.[6]

---

[6] Cardona received 30 months. He was charged with use of a juvenile, which could have resulted in a base offense level of 26, pursuant to U.S.S.G. § 2D1.2(a)(3), a sentencing range of 63-78 months under Category I and 120-150 months under Category VI. The government dropped that charge when Cardona pleaded guilty. There was no similarly serious allegation against the defendant.

### B.    THE DEFENDANT IS A STRONG CANDIDATE FOR REHABILITATION.

The defendant was granted a temporary release from custody to enter the drug treatment program at the Ryan House in Lynn, Massachusetts. The issues which led to the Court's recent order revoking release were regrettable, but some of those issues deserve clarification, particularly the defendant's statement that he no longer needed the facility's help. *See* Pretrial Services Memorandum, June 30, 2005, at 2 ("Mr. Lassiter responded that he had gained what Ryan House could offer at this point.") That statement along with a handful of minor infractions resulted in the defendant's early discharge from the Ryan House program.

The defendant does not deny making a comment that he had gone as far as he could go with the Ryan House, but the statement should be considered in context. After reaching a certain progress level, the defendant was told that the conditions of his release did not allow him to move on to the next level, which would involve attending therapy meetings with his sponsor away from the Ryan House and, in some cases, outside of Lynn.[7] Whether or not this information was accurate, the defendant believed it and responded accordingly. However, at no point did he ever state that he had beaten his addiction and no longer needed treatment. Instead, he was expressing disappointment at what he believed was a restriction on his progress. It should also be noted that the Ryan House staff, while reporting some infractions, never reported or implied that the defendant was not in need of treatment. For that reason, the defendant asks that his sentence include participation in the Bureau of Prisons drug treatment program

Despite the defendant's failure to complete the Ryan House program, he remains a viable

---

[7] It is not clear if this information was relayed by Ryan House officials, Pretrial Services, or both.

candidate for rehabilitation. The Pretrial Services report, cited above, states, "Mr. Lassiter has provided statements to his primary clinician as well as other staff members that his main focus has been his son. From his behavior, it appears that Mr. Lassiter's primary concern at Ryan House is visits with his son rather than drug treatment and recovery skills." *Id.* at 3. The defendant does not deny that his son is a priority in his life. The child was a new-born when the defendant was arrested in this case, and the defendant spent some of his time during pretrial release to establish as strong of a bond as possible with his son, before serving his sentence. His judgment may have been poor but his priorities were healthy. The fact that his son has been a constant and consistent concern in his life shows, despite all the other mistakes he may have made, that he has the capacity to be rehabilitated and to focus on what is truly important.

### III    CONCLUSION

The Court should impose a non-Guideline sentence that mitigates the harsh and disparate effects of the crack cocaine offense levels. The Court should also recommend, as part of any sentence, that the defendant participate in the drug treatment program offered by the Bureau of Prisons.

                                JEROME LASSITER
                                By his attorney,

                                /s/ *John H. Cunha Jr.*
                                John H. Cunha Jr.
                                B.B.O. No. 108580
                                CUNHA & HOLCOMB, P.C.
                                One State Street, Suite 500
                                Boston, MA 02109-3507
                                617-523-4300

Dated: July 20, 2005                    H:\Word\Crim\Lassiter\Supplemental Motion for downward departure.wpd